UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARY L. BRINER, deceased,<br>by her husband KENNETH G. BRINER,<br>Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>Defendant. | )<br>)<br>)<br>)<br>)     1:09-cv-429-WTL-TAB<br>)<br>)<br>)<br>) |

**REPORT AND RECOMMENDATION**

**I.   Introduction**

Mary Briner applied for Disability Insurance Benefits on September 23, 2004, alleging disability since September 15, 2002,[1] because of stress headaches, anxiety, depression, low back pain with radicular pain down her right leg to knee, high blood pressure when anxious, stomach pain, and irritable bowel syndrome. [R. at 82, 93.] Briner's date last insured was December 31, 2003. [R. at 13, 80, 823.] The Social Security Administration denied Briner's application initially and on reconsideration. Administrative Law Judge Peter Americanos held a hearing on February 22, 2008, and denied Briner benefits in a decision dated March 19, 2008. [R. at 13, 27.] The Appeals Council denied review. Briner died May 13, 2008, and her husband, Kenneth Briner, filed this action seeking judicial review. [Docket Nos. 1, 10.] For the following reasons, the Magistrate Judge recommends that the ALJ's decision be affirmed.

---

[1] At the hearing, Briner argued that her onset date was April 7, 1998. [R. at 823.] However, the ALJ determined that Briner's onset date was September 15, 2002, and Briner does not dispute this conclusion on appeal.

**II.     Background**

Mary Briner was born September 17, 1954, and completed high school and some college. [R. at 827.] She worked as a lab technician from 1975 through 1995, a decorator/housekeeper from 1995 through 1998, and a gas station clerk from October 2001 through September 2002. [R. at 134, 827.]

Briner has experienced a number of medical problems over the years. In 1997, she began having lower back pain. [R. at 655.] An MRI revealed a bulging disc but no herniation. [R. at 655.] In 1999, Briner was first prescribed Oxycontin for her back pain. [R. at 659.] Her prescription lost effectiveness several times and was increased. [R. at 660, 664.]

In January 2000, Briner had a panic attack with hyperventilation [R. at 351] and was hospitalized in February for treatment for Oxycontin addiction. [R. at 590–91, 595–96.] Later in 2000 she sought treatment for chronic cramping and diarrhea. She continued overusing medication. [R. at 303.]

A January 2001 CT scan showed mild arthritic changes in Briner's lower back. [R. at 403.] In May 2001, Briner was hospitalized for cardiac and respiratory arrest following a drug overdose. [R. at 357–58.] A drug screen was positive for benzodiazepines, marijuana, and opiates. [R. at 354, 357.]

In 2002, Briner experienced back pain with radiculopathy and visited the emergency room several times to receive pain medicine. [R. at 204, 210, 508–16.]

In 2003, Briner visited the emergency room several times and received Vicodin. She was told she could not receive narcotics. A July 2003 MRI of her spine was within normal limits. [R. at 186, 218, 527, 567.] At this time Briner reported that she was raising her three small

2

grandchildren and was walking thirty minutes on her treadmill twice a day. [R. at 640.] On December 28, 2003, Briner reported that she had started Zoloft, could not think straight, and felt anxiety and a sense of doom. [R. at 455, 643.]

In September 2004 (after her date last insured), she had an abnormal nerve conduction study. [R. at 452–53.] Throughout 2005, she was treated for anxiety and depressive symptoms. [R. at 448, 144, 150, 666–67.] In April 2006 she reported memory problems. [R. at 676.] In June 2007, she was suicidal, and her family reported that she was smoking marijuana, using excessive Fentanyl patches, and abusing benzodiazepines. [R. at 778.] About this time, she began reporting seizures. [R. at 783.]

At the February 22, 2008, hearing, Briner testified that her primary medical problems were memory loss and anxiety. [R. at 827.] She also testified that she experienced frequent seizures. [R. at 828.] When the ALJ asked her to rate her back pain on a scale of 1 to 10, she said that her pain falls all along the range, but that she is always in pain and was experiencing a 3 or 4 during the hearing. [R. at 834–35.] She testified that she was unable to lift or shop, and her husband completed many household chores. [R. at 836–37.] She testified that she had no hobbies or outside activities [*Id.*] Finally, she testified that she had no problem with narcotics or alcohol. [R. at 838.] Briner's husband also testified at the hearing. He believed that Briner's mental problems began in 2005 or 2006, and he testified that she was probably addicted to her pain medication. [R. at 842, 845.]

Both a medical expert and a vocational expert testified at the hearing. The medical expert summarized Briner's medical records and testified that she did not meet or equal Listing 1.04 or 11.14. [R. at 852–54.] The medical expert also testified that Briner could function if she

3

was not under the influence of drugs. [R. at 854.] The vocational expert testified that a person of Briner's age, education, and work experience could work at the light level with no more than superficial interaction with the public, coworkers, and supervisors. [R. at 862.] The vocational expert further testified that Briner could perform her past work and other jobs in the national economy. [R. at 862–63.]

To determine whether Briner is disabled, the ALJ employed the five-step process set out at 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ determined that Briner had not engaged in substantial gainful activity since her alleged onset date. [R. at 15.] At step two, the ALJ determined that Briner had a severe combination of impairments including hepatitis C, back pain, diverticulitis, polysubstance abuse, and depression. [R. at 16.] At step three, the ALJ determined that Briner did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. [R. at 16.] The ALJ next determined that if Briner stopped her substance use, she would not have a impairment or combination of impairments that met or medically equaled one of the listed impairments. [R. at 21.] The ALJ found that if Briner stopped her substance use, she would have the residual functional capacity to perform light work that did not require more than superficial interaction with the public, coworkers, and supervisors. [R. at 21.] The ALJ determined that this residual functional capacity permitted Briner to perform her past relevant work and a significant number of other jobs [R. at 26], and therefore concluded that Briner was not disabled through her date last insured. [R. at 27.]

**III.     Discussion**

Briner challenges the ALJ's determination that she was not disabled on several grounds.

   A.     *Denial of due process*

Briner first argues that the ALJ's decision denied her due process of law because "the ALJ and his selected medical advisor ignored, misstated, argued with and rejected the treatment medical-psychological evidence which supported a finding of disability, ending by substituting their erroneous opinions for the opinions of the claimant's treating psychologists and physicians." [Docket No. 15 at 22.] As the Commissioner points out, this argument has been repeatedly advanced by Briner's counsel in other cases and has been consistently rejected by this Court. [Docket No. 21 at 14 (citing cases).] The argument advanced in this case does not explain what evidence the ALJ ignored, misstated, or argued with, or which portions of the ALJ's decision were the ALJ's own erroneous opinions. Given the ALJ's careful reasoning and citation to the record throughout his decision, the Court cannot conclude that Briner was denied due process.[2]

   B.     *Failure to summon medical advisors*

Second, Briner argues that the ALJ's decision should be reversed because the ALJ failed to summon medical advisors to testify whether her combined impairments equaled a listed

---

[2] Briner alleges that the ALJ "did display abusive conduct toward the claimant by yelling at her during the hearing." [Docket No. 15 at 23 (citing R. at 831–32).] A review of the referenced record pages does not reveal whether the ALJ actually yelled at the claimant, though the verbal exchange between the ALJ and Briner's counsel is somewhat troubling. However, Briner's passing reference to this portion of the record falls far short of what would be required to develop a viable due process claim. On a somewhat related note, also troubling is Briner's counsel's characterization of the Defendant's brief as a "rather deceptive" effort to "deceive" the Court by "covering up" the ALJ's alleged omissions. [Docket No. 24 at 4.] This characterization is incorrect and inappropriate.

impairment.  [Docket No. 15 at 24.]  Briner contends that she presented evidence clearly related to Listings 12.04 (depression) and 12.06 (anxiety-panic attacks).  The Commissioner responds that the ALJ was not required to summon additional medical advisors because Briner presented no evidence of significant mental limitations that were unrelated to her substance abuse before her date last insured.  [Docket No. 21 at 16.]

The responsibility for deciding medical equivalence rests with the ALJ.  20 C.F.R. § 404.1526(e); Social Security Ruling 96-6p.  When necessary, however, an ALJ must summon a medical expert to provide an informed basis for determining whether the claimant is disabled.  *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000) (citations omitted).  Here, the ALJ did not need to call a medical expert because Briner's evidence fell far short of Listings 12.04 and 12.06.  Briner's evidence was as follows:

- A January 17, 2000, hospital record noting that she had a panic attack with hyperventilation [R. at 351];

- A May 22, 2001, hospital record indicating that she had overdosed on drugs[3] [R. at 357–58];

- A May 27, 2001, hospital record noting that she had been referred to psychiatry for polysubstance abuse and a long-standing history of chronic narcotic abuse and pain syndromes [R. at 354];

---

[3]Although Briner characterizes this episode as an "apparent suicide attempt by overdose," the record is unclear whether it was a suicide attempt.  The pages next to the page Briner cites note that "[s]he strongly denies that she was ever intending to kill herself or cause any harm," and that her brother denies this was self harm."  [R. at 359–61.]  The record also notes that she made no comments about wanting to die.  [R. at 360.]  On the other hand, in her November 26, 2004, letter attachment to her social security application, Briner wrote that "I again attempted suicide—and would have died if my brother hadn't found me—I had no heart beat. . . . I kept telling the Drs' it was an accident—but I'm sure they knew better."  [R. at 130.]

- A December 28, 2003, hospital record indicating that she was taking Zoloft, was not thinking clearly, and was experiencing anxiety and a sense of doom [R. at 455].

This evidence, though indicative of legitimate medical problems, falls short of meeting Listing 12.04—which requires "[m]edically documented persistance, either continuous or intermittent," of symptoms of depression such as anhedonia, weight change, sleep disturbance, decreased energy, thoughts of suicide, or hallucinations—or of meeting Listing 12.06—which requires that an individual's anxiety be persistent or recurrent and impair daily living. Without more evidence of impairment, the ALJ was not required to summon a medical expert.

C. *Failure to consider listings*

Briner next argues that the ALJ erred by failing to cite and discuss Listings 12.06 (generalized anxiety disorder) or 12.07 (somatoform disorder) because the evidence is "overwhelming that Mary Briner was totally disabled from these combined impairments." [Docket No. 15 at 26.] This evidence consists of Briner's hospital records for her January 7, 2000, panic attack with hyperventilation; her May 22, 2001, drug overdose; her May 27, 2001, referral for psychiatric treatment; and her December 28, 2003, emergency room visit indicating that she was taking Zoloft and experiencing impaired thinking and anxiety. [Docket No. 24 at 7.]

An ALJ should mention specific listings under consideration, and failure to do so, combined with a perfunctory analysis, may require a remand. *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006). Briner is correct that the ALJ did not consider Listings 12.06 or 12.07. But the evidence Briner highlights falls short of establishing those listings. The January 7, 2000, record predates her alleged onset date by over two years, and the December 28, 2003, record

7

appears to be an isolated occurrence. The May 2001 records do not suggest anxiety or a somatoform disorder.[4] "An ALJ is not required to consider listings that obviously do not apply." *Boucek v. Astrue*, No. 08 CV 5152, 2010 WL 2491362, at *6 (N.D. Ill. June 16, 2010). Listing 12.06 requires persistent or recurring problems, which Briner's medical records do not reflect. Listing 12.07, like other listings for mental impairments, requires two of either marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. The ALJ considered whether Briner's "mental impairments" met these criteria in his Listing 12.04 analysis and concluded that they did not. Under these circumstances, the ALJ did not err by omitting discussion of Listings 12.06 and 12.07.

### D. *Failure to consider evidence*

Briner next argues that the ALJ erroneously ignored evidence supporting a disability determination. [Docket No. 15 at 27.] Briner points to thirty-six medical records she contends "proved [she] was totally disabled" but were overlooked. Of these, twenty-seven follow Briner's date last insured. Evidence following a claimant's date last insured can be relevant to making a retrospective diagnosis of a past impairment. *Allord v. Barnhart*, 455 F.3d 818, 822 (7th Cir. 2006). However, the records Briner cites relate to her condition at that time rather than her condition while she was still insured. [*See* Docket No. 15 at 30–33.] These records are therefore irrelevant to the disability determination.

---

[4] A January 10, 2001, record states that "[t]here are several considerations including from being psychosomatic," [R. at 390] but Briner's other medical records do not show that this possibility was explored.

The nine records dated within her insured period also fail to support a disability determination.

- The omitted January 7, 2000, record of panic attack with hyperventilation is over two years removed from Briner's onset date and appears to be an isolated occurrence. That the ALJ omitted this item from his decision is not reversible error. *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) ("[T]he ALJ need not provide a written evaluation of every piece of evidence.").

- Briner is correct that the ALJ did not specifically cite Briner's May 22, 2001, or May 27, 2001, hospital records. However, the ALJ noted Briner's May 2001 hospitalization, and his written decision demonstrates that he considered these records. [R. at 17.] That he did not characterize her May 2001 drug overdose as a suicide attempt is not error because the record conflicts on that point. *See supra* note 2.

- Briner points to five omitted records involving back or leg pain and argues that these support a determination under Listing 1.04A. The ALJ carefully considered the elements of Listing 1.04A and—based on numerous records—determined that Briner could ambulate effectively. [R. at 16–17.] Because Listing 1.04A requires an inability to ambulate effectively, it was not erroneous for the ALJ to omit evidence of other elements (i.e., positive straight leg raising test, disc protrusion).

- The ALJ also omitted the December 28, 2003, record reporting that Briner was taking Zoloft and had impaired thinking and anxiety. Despite Briner's more recent treatment for anxiety, the Court's review of the record turns up no pattern of treatment for anxiety prior to Briner's date last insured. Because the elements of the anxiety listing require persistence or recurrence, the ALJ did not err in omitting this record.

E.  *Credibility*

Next, Briner argues that the ALJ's negative credibility determination is erroneous because the ALJ failed to comply with Social Security Ruling 96-7p, specifically by relying primarily on objective medical evidence to reject Briner's testimony. [Docket No. 15 at 34.] Briner's argument disregards the ALJ's detailed credibility determination. Although the ALJ mentioned that Briner's testimony was not consistent with her medical records, he also explained the process outlined in Ruling 96-7p and analyzed her credibility over five pages, relying on her

longitudinal medical treatment record (including her failure to attend physical therapy and success with pain medication), daily activities (including treadmill use and care of three small grandchildren), and significance of her polysubstance abuse. [R. at 21–25.] The ALJ's credibility determination is not erroneous.

### F. *Ability to perform past and other work*

Finally, Briner argues that the ALJ erroneously determined that she could perform past and other work because the ALJ's hypothetical question to the vocational expert did not accurately describe her disability. [Docket No. 15 at 34–35.] Unfortunately, Briner does not explain how the ALJ's hypothetical was inaccurate. The ALJ's question asked whether a person of Briner's age, education, and work experience could perform work at the light level without more than superficial interactions with the public, coworkers, and supervisors. [R. at 862.] This hypothetical accurately describes Briner's condition, as the ALJ explained in his decision.

Briner's counsel also posed a hypothetical at the hearing which included restrictions in sitting, standing, walking, lifting, carrying, grasping, pushing, pulling, and other activities. [R. at 863.] The ALJ's decision explains why he concluded Briner could perform the full range of light work without more than superficial interaction with the public, coworkers, and supervisors. [R. at 24.] This determination is supported by Briner's medical records and the medical expert's testimony. The ALJ's determination as to past and other work is not erroneous.

## IV.   Conclusion

For the above reasons, the Magistrate Judge recommends that the ALJ's decision be affirmed. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1), and failure to file timely objections

within the fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: 08/18/2010

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Patrick Harold Mulvany
mulvany@onet.net