**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| MARY L. BRINER, deceased, by her husband KENNETH G. BRINER, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Cause No. 1:09-cv-429-WTL-TAB ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

**ENTRY OVERRULING PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, ADOPTING THE REPORT AND RECOMMENDATION**

The Magistrate Judge has filed his Report and Recommendation in which he recommends that the ALJ's decision in this case be affirmed. The Claimant, Mary L. Briner,[1] filed a timely objection to the Report and Recommendation (Docket No. 26). Having considered the objection and conducted the *de novo* review as required by Federal Rule of Civil Procedure 72(b)(3), the Court, for the reasons set forth below, hereby **OVERRULES** Briner's objection and **ADOPTS** the Magistrate Judge's Report and Recommendation.

Briner's objection essentially restates the arguments made in support of her complaint for judicial review. Briner's first argument is that the ALJ's failure to call a psychologist to testify about whether her mental impairments met or medically equal Listings 12.04 or 12.06 was reversible error. In support of this argument, Briner cites the following evidence:

---

[1] Mary Briner died in May 2008, so it was actually her husband, Kenneth Briner who filed the objection to the Magistrate Judge's Report and Recommendation. However, for clarity's sake, the Court will treat this objection as if it was actually brought by Mary Briner.

- A January 7, 2000, record from Good Samaritan Hospital noting Briner's shortness of breath and diagnosing her as suffering from a panic attack with hyperventilation, acute maxillary sinusitis, and acute bronchitis. Record at 350-51.

- A May 22, 2001, record from Good Samaritan Hospital, which diagnosed respiratory and cardiac arrest "secondary most probably to drug overdose," mixed acidosis, aspiration pneumonia, and a gastrointestinal bleed.[2] Record at 358.

- A May 27, 2001, record from Good Samaritan Hospital diagnosing acute respiratory failure, polysubstance abuse, aspiration pneumonitis, chronic narcotic dependence, irritable bowel syndrom, and chronic pain syndrome. Record at 354.

- A December 28, 2003, record from Wishard Hospital. Briner's chief complaint was that she "recently started on Zoloft [and] now feels like she can't think straight." Record at 455. She also reported anxiety and a sense of doom. *Id.*

Although this evidence certainly indicates the presence of medical problems, it neither meets nor medically equals Listing 12.04 or Listing 12.06. In Briner's objection to the Magistrate Judge's Report and Recommendation she states that the "[t]he Magistrate-Judge determined, without reliance on any psychological evidence, that the ALJ was not required to summon a medical advisor (psychologist) to testify 'because Briner's evidence fell far short of Listings 12.04 and 12.06.'" Docket No. 27 at 3. Briner then claims that "[t]he Magistrate-Judge's determination is

---

[2] Interestingly, although the Claimant characterizes this overdose as a suicide attempt or evidence of mental illness, the Record contains the results of a psychological consult conducted on May 23, 2001. In it, she "strongly denie[d] that she was ever intending to kill herself or cause any harm." Record at 359. Briner also stated that she felt foolish and again indicated that she had not tried to hurt herself. *Id.*

erroneous and is not supported by substantial evidence because it is based on a fundamental misunderstanding of the two concepts of 'meeting' a Listing and of 'medically equaling' a Listing." *Id.* Unfortunately, Briner fails to explain how the above-cited evidence meets or medically equals either Listing 12.04 or 12.06. Having failed to develop this argument, the Court cannot find that the ALJ's decision not to summon a psychologist was erroneous.

Briner's second objection is that the ALJ erred by failing to discuss Listing 12.06. Briner alleges that the Magistrate Judge also erred by giving "his own layman's opinion that the evidence 'falls short of establishing [Listing 12.06].'" *Id.* at 5. Briner alleges that "there was sufficient evidence presented for a medical advisor-psychologist to determine whether the claimant's impairments were medically equivalent to Listing 12.06." *Id.* However, the evidence that Briner cites in support of her assertion that Listing 12.06 was met or medically equaled – the medical records noted above – simply do not establish her desired conclusion. Accordingly, the ALJ was not required to consider Listing 12.06, and his failure to do so was not erroneous.

Next, Briner claims that the ALJ only discussed the evidence that was favorable to his decision. She cites nine pieces of evidence that the ALJ allegedly overlooked and which she claims prove that she was totally disabled before December 31, 2003, her date last insured:

- The January 7, 2000, record diagnosing a panic attack with hyperventilation, acute maxillary sinusitis, and acute bronchitis. Record at 350-51.
- The May 22, 2001, record diagnosing respiratory and cardiac arrest "secondary most probably to drug overdose," mixed acidosis, aspiration pneumonia, and a gastrointestinal bleed. Record at 358.
- The May 27, 2001, record diagnosing acute respiratory failure, polysubstance

3

abuse, aspiration pneumonitis, chronic narcotic dependence, irritable bowel syndrom, and chronic pain syndrome. Record at 354.

- A May 16, 2002, record from Wishard Hospital discussing lower back pain. Record at 204. Briner was referred for an MRI to rule out a herniated disc. *Id*.

- A May 27, 2003, record from Wishard Hospital diagnosing lower back pain and sciatica. Record at 466. The record briefly recounts some of Briner's past test results and notes that in 1998 she had an abnormal MRI with right disc protrusion. *Id*. at 195.

- A June 6, 2003, record from Wishard Hospital in which Briner reports back pain. This record notes that a 1997 MRI showed "some disk bulges and mild stenosis." Record at 193. Briner had a positive straight leg raising test but the physician noted that it was "difficult to test weakness." *Id*. She was referred for an MRI. *Id*.

- A July 8, 2003, record from Wishard Hospital. Briner reported lower back pain that radiated down her right thigh for two weeks, with increasing discomfort in the two days preceding her emergency room visit. Record at 464. The record also notes urinary incontinence in the waiting room and Briner reported "clumpy blood" in her stool. *Id*. The physician documented decreased sensation to pinprick and referred Briner to her primary care physician for an MRI. *Id*.

- A July 17, 2003, record from Wishard Hospital, where Briner presented with lower back pain and urinary incontinence. Record at 189. The physician reported a positive straight leg raising test and referred Briner to the emergency room for

> an "urgent MRI." *Id*.
>
> - The December 28, 2003, record reporting disordered thinking, anxiety, and a sense of doom. Record at 455.

These records certainly indicate that Briner had numerous medical problems, however, they do not, as Briner claims, support a disability determination. In addition, despite Briner's claims to the contrary, the ALJ does reference several of these treatment records in his decision. And, the even though the ALJ did not specifically cite each record, he is not required to do so. *See Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).

Briner claims that five records (those from: May 16, 2003, May 27, 2003, June 6, 2003, July 8, 2003, and July 17, 2003) establish that she meets or medically equals Listing 1.04A. She is incorrect. Although some of these records indicate that Briner had a positive straight leg raising test, they do not establish all of the requirements of Listing 1.04A. Accordingly, the ALJ's decision as to Listing 1.04A was not erroneous. Similarly, despite Briner's claims otherwise, the December 2003 record does not establish that she met or equaled Listing 12.06. Thus, the ALJ's finding with respect to this listing was also not erroneous.

Briner next takes issue with the ALJ's negative credibility determination. She argues that the ALJ did not comply with SSR 96-7p and therefore, his decision must be reversed. Briner correctly notes that when assessing the credibility of an individual's statements an ALJ considers: (1) the individual's activities of daily living; (2) the location, frequency, duration, and intensity of the symptom; (3) factors that precipitate or aggravate the individual's symptom; (4) the type, dosage, effectiveness, and side effects of medication taken for the symptom; (5) treatment, other than medication, used to alleviate the symptom; (6) any other measures the

individual has used to relieve the symptom; and (7) other factors concerning the individual's functional limitations and restrictions due to the symptom. Briner alleges that the ALJ and the Magistrate Judge considered only her daily activities. This is not correct. The ALJ discussed the "nature, location, duration, frequency, and intensity of the claimant's symptoms" in his decision. Record at 22. He also mentioned "approximately seven different times the claimant sought treatment," her use of pain medication, her activities of daily living, and thoroughly discussed other factors which impacted his credibility finding. *See id.* at 22-25. In short, the ALJ's determination did not contravene SSR 96-7p and was not erroneous.

Briner's final argument is that the ALJ's hypothetical was not accurate "because it failed to consider her quite impaired daily functioning and social interaction and repeated decompensations requiring psychiatric treatment." Docket No. 27 at 14. However, a review of the hearing transcript indicates that the ALJ did actually account for Briner's physical limitations and her "quite impaired . . . social interaction." *Id.* Based on Briner's physical state the ALJ restricted her to light work and based on her mental limitations the ALJ stated she could "have no more than superficial interaction with the public, coworkers, and supervisors." Record at 862. Because the ALJ accurately described Briner's condition in his hypothetical, he did not commit error.

## **CONCLUSION**

For the foregoing reasons, the Court **OVERRULES** Briner's objection to the Magistrate Judge's Report and Recommendation (Docket No. 26) and hereby **ADOPTS** the Report and Recommendation in its entirety.

SO ORDERED: 09/20/2010

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Thomas E. Kieper
United States Attorney's Office
tom.kieper@usdoj.gov

Patrick Harold Mulvany
patrick@mulvanylaw.com

7